Wilson v. Burgett, Administrator.

Judgment affirmed.

Filed April 9, 1892.

———————

131 245
133 449

No. 15,063.

## WILSON v. BURGETT, ADMINISTRATOR.

VENDOR AND VENDEE.—*Assumption of Mortgage.*—*Subrogation.*—*Injunction.* —*Lien.*—*Decedents' Estates.*—Defendant's father conveyed to him part of a tract of land. The consideration for the conveyance was the assumption of and the agreement on the part of the defendant to pay certain mortgages on the whole tract. The balance of the tract went to the defendant's mother by will. The defendant failed to pay off the mortgages, and agreed with his mother if she would do so, by the execution of a new mortgage on her portion of the tract, that he would pay off the mortgage so to be executed by her. The mother fulfilled her part of the agreement and then died.

*Held,* that the claim of her estate against the defendant was one for purchase-money of his land, the mother having the right to be subrogated to the same rights as her husband would have had if he had paid the debt and that her administrator might maintain a suit to have it declared a lien on the defendant's 'land though the mortgage defendant agreed to pay was not yet due, and to enjoin the defendant from selling or encumbering said land, it being shown in the complaint that he had no other means with which to pay off said mortgage.

From the Clinton Circuit Court.

*J. N. Sims,* for appellant.

*T. H. Palmer* and *W. F. Palmer,* for appellee.

OLDS, J.—Dudley W. Wilson owned eighty acres of land situated in Clinton county. On the 19th day of June, 1884, said Dudley W. Wilson and Mahala Wilson, his wife, conveyed by warranty deed thirty acres off the west end of

said eighty to their son, William T. Wilson, the consideration for such conveyance, as stated in the deed, was, that on account of the age and infirmity of his father, William had, out of his own funds, paid the taxes for many years past on the eighty-acre tract, also the interest that had yearly accrued on a school fund mortgage of four hundred and thirty-seven and $\frac{50}{100}$ dollars on said real estate since the loan was created, and the further consideration that he would now fully assume the payment of said loan of $437.50, together with all interest accruing thereon, until the same was paid, and would keep the taxes paid on the eighty acres until he fully satisfied said mortgage.

Instead of there being one school fund mortgage on said land, there were four school fund mortgages on separate parcels of said land, but upon the 80 acres, including the 50 acres not conveyed, the four mortgages amounted to the total of $445.50, and they are alleged in the complaint to be the mortgage debt referred to in the deed, and the only mortgages on said land; that Dudley W. Wilson, after the execution of the deed, made a will devising the remaining 50 acres to his wife, Mahala Wilson, and Dudley W. died in 1885; that, after his death, the mortgages being due and wholly unpaid, to get further time William agreed with his mother that, if she would pay the mortgages by the execution of a new mortgage for the aggregate amount of the four mortgages on the 50 acres of the land devised to and then owned by her, he would pay the mortgage so to be executed by her. The mother, Mahala, did execute a new mortgage for the aggregate amount of the other four mortgages, and they were satisfied. Afterwards, in 1886, Mahala died, and the appellee was duly appointed administrator of her estate, and he filed his complaint in this case, alleging the foregoing facts, and further alleging that said William T. had no means other than the 30 acres of land except his distributive share or portion of the 50 acres inherited from his mother, which would not exceed $100, and that he feared

and there was danger of William T. selling or encumbering the 30 acres, whereby it would be divested from the lien which was chargeable against it for the purchase-money, and that the estate would be compelled to pay the mortgage, and would be deprived of its security and lien on the 30 acres for the payment.

There was a prayer to have a lien declared, and that appellant be enjoined from selling without having paid the mortgage, etc.

To this complaint appellant filed a demurrer for want of facts, which was overruled, and exceptions were reserved. Judgment on demurrer for the appellee, and the ruling on the demurrer is assigned as error.

The facts alleged show that Dudley W. Wilson conveyed to William T. Wilson thirty acres of land. As a consideration for the same, William was to pay off a mortgage encumbrance upon fifty acres of land to which Dudley retained the title. Mahala Wilson, wife of Dudley, took the title to the fifty acres by the will of Dudley. William failed to pay the mortgage debt; it being a lien upon the fifty acres owned by Mahala, she paid it. True, it is alleged she paid it with the agreement on the part of William that he would pay off the mortgage so executed by her. But this was a parol agreement. Mahala dies, and the appellee is appointed administrator of her estate. The evidence that the mortgage upon the land was given in payment of the debt of William, and that the estate has the right to be subrogated to the lien which the deceased Mahala had paid in her lifetime, and to have a lien declared, all rests in parol, and the appellee brings this suit, and alleges the facts in the complaint. The consideration which William agreed with his father to pay for the thirty acres was the mortgages which Mahala paid. If the father, Dudley Wilson, had lived, and William had failed to pay the mortgages, as he had agreed to do, and Dudley had paid them, it would have been a failure on the part of William to have paid the purchase-money, and cer-

tainly Dudley would have had the right to have sued William and had a vendor's lien declared upon the thirty acres.. If Dudley, by his last will, devised the fifty acres upon which the mortgages were liens, to his widow Mahala, and William failed to pay the mortgages as he had contracted, and they were liens upon the lands of Mahala, and she pays them, certainly she has the right to be subrogated to the same rights her husband, Dudley, would have had if he had paid them. The appellee, representing her estate, had the right to enforce the remedy, and we think had the right to have an adjudication upon the facts, and a lien declared, although the mortgage debt executed by his decedent was not yet due, and notwithstanding the appellant had agreed to pay it when it became due. The son agreed, as a consideration for the land, to pay the mortgages. In failing to do so, he failed to pay the purchase-money which he had agreed with his father to pay, and if the father had been compelled to pay the same to protect his own land, the son would have become indebted to the father for the amount of the purchase-money, and the father in such event would have had the right to have a vendor's lien declared on the land sold to the son. The mother having become the owner of the land by devise from her husband, the son failing to pay the mortgages, she had the right to pay the debt to preserve her own land from sale under the mortgage, and she, under the circumstances, would have the right to be subrogated to the same rights as her husband would have had if he had paid the debt.

The son having agreed to pay the mortgage executed by the mother in payment of the mortgages which he agreed to pay, the question remains whether she had the right to have her lien declared in advance of its enforcement before the last mortgage matured and a failure to pay. In other words, it presents the question whether a vendor can maintain an action to have a vendor's lien established independent of an action to enforce its collection, and we think in a proper case this may be done. See 2 Story Eq. (13th ed.), sections 694,

701, 711, 730, 825, 826, 850, 851 and 912, treating of *bills quia timet,* at section 826 : " They are in the nature of writs of prevention, to accomplish the end of precautionary justice. They are ordinarily applied to prevent wrongs or anticipated mischiefs, and not merely to redress them when done. The party seeks the aid of a court of equity because he fears (*quia timet*) some future probable injury to his rights or interests, and not because an injury has already occurred which requires any compensation or other relief. The manner in which this aid is given by courts of equity is, of course, dependent upon circumstances."

It is by reason of this doctrine that courts of equity appoint receivers, order money paid into court, direct security to be given, money paid over, issue injunctions, and grant many other remedies.

We think clearly it is within the province of a court of equity to establish a vendor's lien in advance of enforcement or of its maturity, in order to prevent probable or anticipated mischief. The party seeks the aid of the court because he fears a future probable injury.

In the case at bar the appellant has no means to pay the debt when it matures, except the thirty acres of land which it is asked a lien be declared upon until a lien is established. There is danger of the property being disposed of and innocent parties obtaining a lien which would be paramount to the right of the appellee to have a lien declared. There exists a right to have a lien declared by a court of equity, but if the lien can not be established until the mortgage matures and is paid, so that the appellant can enforce payment in connection with the establishment of the lien, rights of innocent parties may intervene which will deprive the appellee of any benefit from a vendor's lien. Akin to this doctrine was the right, in equity, of a surety to maintain an action to compel the principal to pay the debt in advance of the same having been paid by the surety, or even having been called upon for the payment, though this right may not

exist in this State since the statute authorizing the surety to give notice to the creditor and compel him to bring suit. Brandt Sure. & Guar. sections 192 and 193; *Flight* v. *Cook,* 2 Ves. 619; Maddock Ch., star pp. 178 and 9; 2 Dart Law of Vend. & Pur. (6th ed.), p. 1248.

There was no error in overruling the demurrer to the complaint.

Judgment affirmed, with costs.

Filed May 26, 1891; petition for a rehearing overruled April 9, 1892.